**In re Steven W. JONES, Debtor.**

**Steven W. JONES, Plaintiff,**

**v.**

**STATE OF GEORGIA DEPARTMENT OF REVENUE, Defendant.**

**Bankruptcy No. A92–75172–JB.
Adv. No. 92–7068.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

July 6, 1993.

Franklin D. Hughes, Jr., Todd E. Kessler, Atlanta, GA, for plaintiff/debtor.

Patricia Coote Garrett, Asst. Atty. Gen., Atlanta, GA, for defendant.

## ORDER

JOYCE BIHARY, Bankruptcy Judge.

This adversary proceeding is before the Court on defendant's motion for summary judgment. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Plaintiff filed a complaint requesting a determination that a tax liability in the amount of $1,420.18 to the State of Georgia Department of Revenue (the "State" or "defendant") is not excepted from discharge under 11 U.S.C. § 523(a)(1).[1]

The State filed a motion for summary judgment, arguing that the material facts are undisputed and that the debt is excepted from discharge as a matter of law. First, the State argues that plaintiff's 1987 state income tax liability is not dischargeable under 11 U.S.C. § 523(a)(1)(B)(i), because plaintiff did not file an amended state return after the United States Internal Revenue Service (the "IRS") assessed a deficiency in plaintiff's 1987 federal adjust-ed gross income. Alternatively, the State contends that the tax liability at issue is not dischargeable under 11 U.S.C. § 523(a)(1)(A), because plaintiff did not file the amended return which was due within three years of the filing of the plaintiff's bankruptcy petition.

The key issue is whether plaintiff was required under Georgia law to file an amended state return after his federal tax obligation was reassessed. After reviewing the motion, plaintiff's response, and the entire record, the Court concludes that plaintiff was required to file an amended return and the State's motion for summary judgment should be GRANTED.

The material facts are undisputed.[2] On March 14, 1990, the IRS issued a deficiency assessment against plaintiff, indicating that plaintiff had understated his 1987 income and assessing an additional federal tax liability of $4,163.00. The assessment was finalized no later than April 10, 1990, the date upon which plaintiff states he accepted the correction. Plaintiff never filed a corrected or amended 1987 Georgia state tax return. On or about August 15, 1991, the State sent plaintiff a "Notice of Proposed Assessment", indicating an additional state income tax liability in the amount of $1,194.00 in additional taxes and $478.00 in interest through August 15, 1991, for a total of $1,672.00. The Notice gave plaintiff 30 days to set forth any disagreement with the assessment in writing or to request an informal conference. The Notice also provided, in part, as follows:

SECTION 48–7–82 OF THE OFFICIAL CODE OF GEORGIA ANNOTATED PROVIDES THAT THE TAXPAYER FURNISH INFORMATION TO THE GEORGIA INCOME TAX DIVISION REGARDING CHANGES MADE BY THE INTERNAL REVENUE SERVICE TO HIS FEDERAL RETURN WITHIN 180 DAYS AFTER THE FINAL DETERMINATION. IF THE TAXPAYER

---

1. The complaint refers to a claim of $1,420.18 as the amount of taxes due and owing to the State. The amount of the assessment is a slightly larger amount.

2. Plaintiff disputes some of the State's allegations. However, the facts disputed by plaintiff are not material to the resolution of this motion.

DOES NOT FURNISH THIS INFORMATION, THE COMMISSIONER SHALL MAKE ASSESSMENT FOR TAXES BASED ON THE CHANGE OR CORRECTION WITHIN FIVE YEARS FROM THE DATE THE REPORT WAS RECEIVED FROM THE UNITED STATES GOVERNMENT OR ITS AGENT. YOUR REPORT WAS RECEIVED 04/13/90.

Plaintiff does not contend that he ever requested an informal meeting or set forth any disagreements in writing with the proposed assessment. On October 24, 1991, the State issued an "Official Notice of Assessment and Demand for Payment" pursuant to O.C.G.A. § 48-2-45 in the amount of $1,194.00 in taxes, $513.82 in interest and $17.91 in penalties for a total of $1,725.73.

On September 17, 1992, plaintiff filed a Chapter 7 bankruptcy case. Plaintiff then filed this adversary proceeding, alleging that the tax debt to the State for 1987 should be declared nondischargeable.

Section § 523(a)(1) of the Bankruptcy Code provides as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

If plaintiff was required to file an amended state return after the federal assessment, there are two grounds on which the tax debt for 1987 would be nondis-chargeable. First, under 11 U.S.C. § 523(a)(1)(B)(i), plaintiff's tax liability is nondischargeable if he did not file a required return with the State of Georgia after the IRS reassessed his federal adjusted gross income. Second, if plaintiff failed to file a required return within three years of the filing of bankruptcy, plaintiff's tax debt to the State would be entitled to priority under § 507(a)(7)(A)(i), and would in turn be excepted from discharge under § 523(a)(1)(A).

The parties disagree on whether plaintiff was required to file a return. The State cites O.C.G.A. § 48-7-82(e)(1), which provides as follows:

(e)(1) When a taxpayer's amount of net income for any year under this chapter as returned to the United States Department of the Treasury is changed or corrected by the commissioner of internal revenue or other officer of the United States of competent authority, the *taxpayer, within 180 days after final determination of the changed or corrected net income, shall make a return to the commissioner of the changed or corrected income,* and the commissioner shall make assessment or the taxpayer shall claim a refund based on the change or correction within one year from the date the return required by this paragraph is filed. If the taxpayer does not make the return reflecting the changed or corrected net income and the commissioner receives from the United States government or one of its agents a report reflecting the changed or corrected net income, the commissioner shall make assessment for taxes due based on the change or correction within five years from the date the report from the United States government or its agent is actually received.

O.C.G.A. § 48-7-82(e)(1) (Michie, Supp. 1992) (emphasis added).

■ The statute quite clearly indicates that a return here is required, and this construction is supported by Judge Herschner's decision in *In re Wilson,* Case No. 90-53553 (Bankr.M.D.Ga. Jan. 17, 1992).

*See also Haywood v. State of Illinois (In re Haywood),* 62 B.R. 482 (Bankr.N.D.Ill. 1986) (construing a similar Illinois statute) and *Chilivis v. Levy,* 240 Ga. 792, 794, 242 S.E.2d 594 (1978) (where the Supreme Court of Georgia described the virtually identical predecessor statute as a section that *"requires* a taxpayer to make return to the Revenue Commissioner when the taxpayer's net income is changed or corrected by IRS") (emphasis added).

Plaintiff argues that O.C.G.A. § 48–7–82(e)(1) lacks the specificity of the Illinois statute construed in *Haywood* and asserts that plaintiff here was not required to file an amended return, citing *Blackwell v. Commonwealth of Virginia Department of Taxation (In re Blackwell),* 115 B.R. 86 (Bankr.W.D.Va.1990). The Virginia statute in *Blackwell,* however, provided that the "taxpayer shall report" IRS changes to the State Tax Department, and the Court held that the term "report" was not equivalent to filing a "return." Thus, the tax obligation there was not excepted from discharge under 11 U.S.C. § 523(a)(1)(B)(i). Here, however, the Georgia statute, O.C.G.A. § 48–7–82(e)(1), states that a "return" is required.

▪ Plaintiff also argues that the State can file a return on behalf of a taxpayer who fails to do so [3] and that this relieves the debtor from any requirement to file an amended return within the meaning of 11 U.S.C. § 523(a)(1). This argument is without merit and has been rejected by other courts. *See In re Bergstrom,* 949 F.2d 341, 343 (10th Cir.1991) (statute allowing the IRS to file a return for taxpayer "does not supplant the taxpayer's original obligation to file [a return]" (*citing Moore v. Commissioner,* 722 F.2d 193, 196 (5th Cir. 1984)); *see also Rench v. United States (In re Rench),* 129 B.R. 649 (Bankr.D.Kan. 1991); *Hofmann v. United States (In re Hofmann),* 76 B.R. 853 (Bankr.S.D.Fla. 1987).

▪ Next, plaintiff argues that the notice dated August 15, 1991 and the Department of Revenue's instruction booklet were confusing, and that they relieved the debtor from any obligation to file an amended return. This argument is also without merit for several reasons. First, the notice is dated some sixteen months after the IRS' final determination of a change in debtor's income which was on or about April 10, 1990. Pursuant to O.C.G.A. § 48–7–82(e), debtor was required to file an amended return within 180 days of the IRS determination or by October 10, 1990. Thus, debtor could not have relied on the notice in August of 1991 to excuse him from filing a return in October of 1990. Second, the Court has reviewed the instruction booklet referred to by debtor and does not find it to be particularly confusing. The booklet refers to the form to be used in filing an amended return, and it refers to the situation when a federal audit results in a change in net income. The taxpayer is advised that he/she is to furnish in 180 days, a schedule and a "return reflecting the change." Third, even if the instruction booklet were confusing, the government publication does not bind the State. *See CWT Farms, Inc. v. Commissioner,* 755 F.2d 790, 803 (11th Cir.1985); *Carpenter v. United States,* 495 F.2d 175, 184 (5th Cir. 1974); *Adler v. Commissioner,* 330 F.2d 91 (9th Cir.1964); *see also* O.C.G.A. § 45–6–5.

▪ Debtor filed a supplemental brief on June 17, 1993, in which he raised new facts. He contends that the State should be equitably estopped from asserting that the debtor's 1987 tax liability is not dischargeable, contending that the State misled Mr. Jones into believing that no amended tax return was due. This argument is not supported by the new facts or the law. Debtor presents an affidavit of a man named Ron Turner who states that on or about June 10, 1993, he called eleven telephone numbers of eleven offices of the Georgia Department of Revenue and asked whether he needed to do anything for the State of Georgia if his federal tax return was audited, or whether the State would just send him a bill. He tape recorded each of these telephone conversations without informing the other parties to the conversation, and

---

**3.** The Georgia statute which permits this action is O.C.G.A. § 48–2–37.

presented transcripts of each of these conversations.[4] Debtor argues that these telephone calls establish that the State's advice on whether to file an amended return is misleading. The difficulties with debtor's argument are almost too obvious. It is clear that debtor did not rely on these telephone calls, as they were made in June of 1993 and there is no contention that debtor had any connection to Mr. Turner.

Debtor argues in his brief that the majority of the eleven telephonic responses were misleading and that six of the employees of the Department of Revenue told him to wait on a bill from the State. The Court has reviewed the transcripts and does not find these conversations to be misleading. In fact, seven of the individuals called told Mr. Turner he needed to *amend* his return (Barbara Williams, Roy Chaney, Charles McGuire, Pat Hanson, Deneen Barton, Pete Powell, and Ms. Tate). Two of the individuals (Bob Fuller and Daphne Moss) told Mr. Turner to get back in touch with them. Mr. Fuller told Mr. Turner to call him when he received the return or federal audit and a Miss Shifflet would go over it with him, and Mr. Moss told Mr. Turner to bring the returns and changes all in within 120 days and he would take a look at it. A Ms. Jones said nothing that sounded as if she knew what to do, and only one person, Scarlett Cato, said anything that could ar-

guably be interpreted to mean that debtor did not need to amend his state tax return.

Last but not least, the oral advice allegedly given here by government employees was advisory only and did not bind the State. *See Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984); *S & M Inv. Co. v. Tahoe Regional Planning Agency,* 911 F.2d 324 (9th Cir. 1990); *United States v. Vonderau,* 837 F.2d 1540 (11th Cir.1988); *In re Larson,* 862 F.2d 112 (7th Cir.1988); *see also Henderson v. Carter,* 229 Ga. 876, 195 S.E.2d 4 (1972).

In accordance with the above reasoning, defendant's motion for summary judgment is hereby GRANTED and the plaintiff's 1987 income tax liability to the State of Georgia is not dischargeable under 11 U.S.C. § 523(a)(1)(B)(i) and § 523(a)(1)(A). A separate judgment will issue.

IT IS SO ORDERED.

---

**4.** While secretly recording a telephone conversation with a witness violates no law, the practice raises serious ethical concerns and questions of professionalism. *See Parrott v. Wilson,* 707 F.2d 1262, 1271 (11th Cir.1983).